**Augustine PETRILLO, Petitioner, Appellant,**

**v.**

**Stephen O'NEILL, Respondent, Appellee.**

No. 05–1555.

United States Court of Appeals, First Circuit.

Heard Oct. 3, 2005.

Decided Nov. 1, 2005.

Douglas J. Beaton for appellant.

David M. Lieber, Assistant Attorney General, Criminal Bureau, with whom Thomas F. Reilly, Attorney General, was on brief for appellee.

Before LYNCH, Circuit Judge,
CAMPBELL and STAHL, Senior Circuit Judges.

CAMPBELL, Senior Circuit Judge.

Appellant petitioner Augustine Petrillo ("Petrillo") appeals from a final order of the United States District Court for the District of Massachusetts denying his habeas corpus petition.[1] Petrillo was convicted in state court of one count each of aggravated rape, kidnapping, and threatening to commit assault. In his petition, he argues that the Massachusetts Appeals Court failed to apply the appropriate constitutional standard in reviewing an evidentiary error committed at his trial. We affirm the denial of the habeas petition.

## I. Background

The facts of the case, set out in *Commonwealth v. Augustine Petrillo*, 50 Mass. App.Ct. 104, 735 N.E.2d 395 (2000), *cert. denied*, 532 U.S. 1030, 121 S.Ct. 1981, 149 L.Ed.2d 772 (2001), are summarized below. Petrillo's victim, a 24–year–old immigrant from the Dominican Republic who spoke only Spanish, met him in the fall of 1995. Thinking he could help her learn English and gain financial independence from her mother, she began seeing him and soon moved into his rooms at a residential hotel. Thereafter, she alleged, Petrillo began to force her to have sex with him. He threatened her with knives and trapped her in the apartment for long periods of time. She left him on February 22, 1996.

At trial, she testified that between February 19–22, 1996, Petrillo bound her with duct tape and forced her to have sex with him. She testified that "he grabbed me and put me across his knees and hit me on my butt," that she was required to perform "from behind," as well as lying on her back with her legs above her head. On these occasions, she stated, Petrillo played pornographic videos and imitated "everything that was on the videos," in addition to doing "other things that were his own things."

1. The petition was filed pursuant to 28 U.S.C. § 2254.

The state's case focused on the testimony of the victim and of witnesses who corroborated some parts of her testimony. One witness testified that he had found the victim on February 22 hiding behind a car in his driveway. She had fled the apartment and appeared confused and upset. He took her to the police station. On February 28, 1996, the police obtained a search warrant for Petrillo's hotel room and recovered a number of items, including two pornographic videotapes which are at issue in this appeal.

The defense called nine witnesses at trial, trying to demonstrate that there were several occasions on which the victim was free to escape or ask for help but did not do so. The defendant did not testify but through other witnesses sought to give the impression that he had had only consensual sex with the victim. The testimony of the defense witnesses and cross-examination of the government witnesses gave some foundation for the defense theory, rejected by the jury, that the victim was fabricating her story because the defendant had not provided the expected financial assistance.

At the beginning of trial in Suffolk County Superior Court, the court heard a motion *in limine* about the admissibility of the pornographic videos. In urging their admissibility, the state argued that the victim would testify, as she did, that she had been forced to watch the tapes and then commit the acts depicted in the films. The defense objected that the tapes had no bearing on the case and would inflame the jury. The defense had admitted that Petrillo had engaged in sex with the complainant; the issue was whether it was consensual. The court took the motion *in limine* under advisement and informed the potential jurors at voir dire about the sexually explicit nature of the possible evidence. The court excused any potential juror who stated that personal discomfort with such evidence would impede his or her ability to discuss it with other jurors. After the victim's testimony, the judge watched the tapes and decided that a portion, lasting sixteen minutes and showing conduct the victim was allegedly forced to reenact, could be shown to the jury.

Before playing the videos for the jury, the judge gave a limiting instruction emphasizing that possession of the videotapes was not illegal and that it would not be proper to consider possession and viewing of the tapes as indicative of the defendant's bad character or guilt of the crimes charged. The judge told the jurors that they could, if the government proved that the tapes were playing during the acts alleged, consider the evidence relevant to the circumstances and conditions at the time of the alleged acts and relevant to the defendant's state of mind at the time of the alleged acts. A defense objection to the state of mind reference was overruled.

On April 11, 1997, the jury convicted Petrillo on one count each of aggravated rape, kidnapping and threatening to commit assault, but acquitted him on nine other counts in the indictment, including aggravated rape, indecent assault and battery, and assault and battery with a dangerous weapon. On April 15, 1997, the court sentenced Petrillo to seven-to-ten years in prison on the rape conviction and then on April 30, 1997 sentenced him to a concurrent three-to-five year sentence for the kidnapping conviction. Petrillo received five years' probation on the threatening conviction.

Petrillo appealed to the Massachusetts Appeals Court, arguing that the excerpts of the pornographic videotapes should not have been admitted into evidence. The Appeals Court ruled that the excerpts should not have been admitted into evidence but affirmed the rape conviction,

holding the admission of the tapes to have been harmless error. It wrote that it had weighed the prejudicial effect of the improper evidence and found that the error was harmless, noting that the jury had acquitted the defendant of all but three of the charges. Petrillo was denied further appellate review by the Supreme Judicial Court of Massachusetts and was denied certiorari by the United States Supreme Court. On April 2, 2001, he filed the instant federal habeas corpus petition, arguing that the Massachusetts Appeals Court's harmless error determination was in error.

On April 1, 2005, adopting the recommendation of the magistrate judge, the district court denied the petition. This appeal followed.

## II. Discussion

■ Petrillo appears to take for granted that admitting the videotapes was not only a violation of Massachusetts evidentiary law but an error of constitutional magnitude. This is a questionable assumption at best, and if mistaken, would leave no basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1984)) (" '[F]ederal habeas corpus relief does not lie for errors of state law.' . . . In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United

States."); *see also Rodriguez v. Spencer*, 412 F.3d 29, 37 (1st Cir.2005).[2] But even assuming *arguendo* that the error was of constitutional proportion, the state appeals court, in upholding the conviction, chose and applied the correct standard of review for constitutional error, asking by implication whether the error was harmless beyond a reasonable doubt and deciding, in effect, it was not. *See infra.*

■ We review *de novo* the legal conclusions of the district court's judgment on a petition for a writ of habeas corpus. *Norton v. Spencer*, 351 F.3d 1, 4 (1st Cir. 2003). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prevents a federal court from granting an application for a writ of habeas corpus with respect to a claim adjudicated on the merits in state court unless that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 399, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

■ "On direct appeal, a state court confronted by a preserved constitutional error must set aside the judgment unless it is satisfied that the error was harmless beyond a reasonable doubt." (*Sanna v. Dipaolo*, 265 F.3d 1, 14 (1st Cir.2001)) (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). A federal habeas court is bound

2. To be a constitutional violation, a state evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible. *Subilosky v. Callahan*, 689 F.2d 7, 10 (1st Cir.1982). Other than a passing reference to his 5th Amendment rights to due process and fair trial, Petrillo in his appeal to the Massachusetts Appeals Court made no developed argument that his trial was infused with inflammatory prejudice so as to be fundamentally unfair; rather, he em-

phasized state evidentiary issues. *But see Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) ("The Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."). We see little to indicate that the tapes, which were relevant to the victim's testimony, so infused the trial with inflammatory prejudice as to render a fair trial impossible. *See infra.*

to uphold a state court judgment as long as the error did not have a "substantial, injurious effect on the jury's verdict." *Id.* (citing *Brecht v. Abrahamson,* 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).

### The State Court's Standard of Review

■ Assuming *arguendo* that the evidentiary error found by the Massachusetts Appeals Court was one of constitutional magnitude, *see supra* note 2, we nonetheless find that the state appeals court, applying the appropriate *Chapman* standard, correctly found the error to have been harmless. In its opinion affirming Petrillo's rape conviction, the Massachusetts Appeals Court did not explicitly advert to the *Chapman* test of harmless error beyond a reasonable doubt but rather relied on a state court case, *Commonwealth v. Mahdi,* 388 Mass. 679, 696, 448 N.E.2d 704, 714 (1983), which in turns cites and applies the *Chapman* harmless error standard. Thus, in *Mahdi,* writing for the Massachusetts Supreme Judicial Court, Justice Liacos stated, "The prosecutor's unconstitutional conduct, however, must be harmless beyond a reasonable doubt." *Id.* (citing *Chapman,* 386 U.S. at 24, 87 S.Ct. 824).

The *Petrillo* court wrote that "*Mahdi* suggests several factors [for review], among them the relationship between the evidence and the defense theory of the case, the weight of the evidence against the defendant, and the availability of curative instructions." 50 Mass.App.Ct. at 109, 735 N.E.2d at 399. These factors are among those marshaled in *Mahdi* to ascertain whether the *Chapman* standard was or was not met. *Mahdi,* 388 Mass. at 696–97, 448 N.E.2d at 714–15.

The state appeals court found that the showing of the videotapes might have bolstered the defense theory of the case, and it observed that the defendant was acquitted of all but three of the charges. The court further observed that the other evidence against Petrillo was strong, citing the testimony of one witness who had heard the defendant yelling in the hall and the victim's "trembling" voice responding within the apartment. Finally, the court noted that the film excerpts shown to the jury were rather tame and did not make Petrillo look "particularly depraved."

■ Petrillo argues that the appeals court erred in relying on *Mahdi* instead of specifically alluding to *Chapman* itself. A state court, however, does not need to cite Supreme Court precedents so long as "neither the reasoning nor the result of the state-court decision contradicts [those precedents]." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002). *Mahdi* expressly incorporates the federal *Chapman* standard, and the district court rightly inferred from the Massachusetts Appeals Court's reference to *Mahdi* that the court had understood and applied the correct standard for review of a constitutional error. Relying on the same facts as were significant to the state appeals court, the district court also concluded that the admission of the tapes did not have a substantial and injurious effect on the verdict. On the record before us, we agree with the district court's determination.

We therefore ***affirm*** the district court's denial of the petition for habeas corpus.