# United States Court of Appeals
## For the First Circuit

No. 09-1059

MICHAEL LYONS,

Petitioner, Appellant,

v.

BERNARD BRADY,

Superintendent, Old Colony Correctional Center,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch, Chief Judge,
Howard and Thompson, Circuit Judges.

Paul J. McManus for appellant.
Eva M. Badway, Assistant Attorney General, with whom Martha
Coakley, Attorney General, was on brief, for appellee.

January 17, 2012

**THOMPSON, Circuit Judge**. A Massachusetts jury convicted petitioner Michael Lyons ("Lyons") of second-degree murder in the death of his two week old son. Lyons timely filed a motion seeking to reduce the verdict to involuntary manslaughter, which the trial court granted and the Massachusetts Appeals Court ("MAC") affirmed. However, on appeal to the Supreme Judicial Court ("SJC"), the court vacated the reduction and reinstated Lyons's original conviction for second-degree murder. Thereafter, Lyons sought a writ of habeas corpus in federal district court claiming a violation of his constitutional rights under the Fourteenth Amendment -- specifically, that the admission of autopsy photographs had deprived him of a fair trial. The district court dismissed the petition and Lyons appealed to this court. Before us, Lyons challenges the dismissal of his habeas petition. Bound by the strictures of the standard of review set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we affirm.

## I.  BACKGROUND

### A.  Facts

We review the facts as described by the SJC "supplemented with other record facts consistent with the SJC's findings." Yeboah-Sefah v. Ficco, 556 F.3d 53, 62 (1st Cir. 2009) (internal quotation marks and citation omitted).

On the afternoon of June 28, 1998, Lyons's two week old infant son was rushed to Good Samaritan Hospital and then "med

flighted" to New England Medical Center in Boston -- he died there as a result of "severe cerebral edema and subdural hematomas due to shaking." Commonwealth v. Lyons, 828 N.E.2d 1, 4 (Mass. 2005). Lyons, who was approximately five feet eight inches tall and weighed between 275 and 300 pounds, admitted to police that he had shaken the baby. Id. Lyons described how he had placed his hands underneath the baby's armpits and shaken his son. Id. Apparently, he did so with enough force to shake a 215 pound man. Id.

At trial, three autopsy photographs were introduced over Lyons's objection. Id. at 8. The trial court instructed the jurors that the pictures were being introduced for the limited purpose of "draw[ing] attention to a clinical medical status or to the nature and extent [] of the alleged victim[] in [this] case." There were bruises on both sides of the baby's upper back muscles just below his neck, and his body showed all the tell tale signs of shaken baby syndrome, which "essentially destroyed his brain." Id. at 4. Due to the severity of the child's injuries, he would have lost consciousness and become unresponsive "nearly instantaneously or within a very few seconds." Id. While Lyons admitted to shaking his son, he claimed that he did so out of panic, in an attempt to revive the baby, after finding the baby non-responsive.[1] Id. The crux of Lyons's defense was that he had acted without

_____

[1]Five years earlier, Lyons and his wife had suffered the loss of another infant son due to natural causes.

-3-

legal malice and was therefore guilty of involuntary manslaughter, not second-degree murder.[2]  Id.

B.  Procedural History

On July 13, 2001, a state court jury found Lyons guilty of murder in the second degree for the death of his infant son. Lyons appealed and filed a motion pursuant to Mass. R. Crim. P. 25(b)(2), seeking a reduction of the verdict from second-degree murder to involuntary manslaughter.  The Commonwealth opposed the motion.  In its Memorandum of Decision and Order, the trial court discussed the "fine line distinguishing murder based on the third prong of malice from . . . involuntary manslaughter."  After "[c]onsidering all the circumstances of the case at bar, [the court was] satisfied that the degree of risk of physical harm manifested by [Lyons's] actions was more consistent with wilful and wanton conduct than with third-prong malice."  Therefore, "[a]fter lengthy and soul-searching deliberation, [the court] determined that justice [would] be more nearly achieved by reducing the verdict from murder in the second degree to involuntary manslaughter" and

---

[2]Under Massachusetts law, the element of malice necessary for a conviction of murder in the second degree can be satisfied by one of three different prongs.  See Commonwealth v. LaCava, 783 N.E.2d 812, 820 n.9 (Mass. 2003).  Lyons was convicted based on the third prong.  Under "third prong malice," the malice element is satisfied by "proof of circumstances in which a reasonably prudent person would have known, according to common experience, that there was a plain and strong likelihood that death would follow the contemplated act."  LaCava, 783 N.E.2d at 820 n.9; see also Commonwealth v. Vizcarrondo, 693 N.E.2d 677, 680 n.3 (Mass. 1998).

granted Lyons's motion.  The MAC affirmed the order reducing the verdict, concluding that the trial justice had acted within her discretion.  See Commonwealth v. Lyons, 807 N.E.2d 862 (Mass. App. Ct. 2004).  Subsequently, the Commonwealth filed an application for leave to obtain further appellate review, which the SJC granted. Lyons, 828 N.E.2d at 4.

In a 4-3 decision, a divided SJC found that the trial justice abused her discretion in reducing Lyons's verdict from second-degree murder to involuntary manslaughter and reinstated the conviction.  Id.  Lyons sought rehearing but was denied. Thereafter, Lyons filed a petition in federal court for a writ of habeas corpus under 28 U.S.C. § 2254.  He claimed that the admission of the autopsy photographs violated his right to due process as guaranteed by the Fourteenth Amendment.  The petition was denied.  Lyons appealed and filed a motion for a certificate of appealability ("COA"), which the district court granted on June 25, 2009.[3]

---

[3]We expanded the COA in an order dated June 24, 2011 for the purpose of allowing the parties to brief three additional issues. Two of those issues centered around the Commonwealth's failure to file the full state court trial transcript with the district court. While we thank the parties for their thorough submissions, ultimately we need not address this issue on appeal as it has no bearing on our final determination.

-5-

**II. DISCUSSION**

A. Standard of Review

Our review of the district court's denial of habeas relief is de novo. See Shuman v. Spencer, 636 F.3d 24, 30 (1st Cir. 2011).

Pursuant to AEDPA, "our standard of review of the SJC's decision depends on whether that court 'adjudicated on the merits' [Lyons's due process] claim." Healy v. Spencer, 453 F.3d 21, 25 (1st Cir. 2006) (quoting 28 U.S.C. § 2254(d)); see also Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) ("AEDPA's strict standard of review only applies to a 'claim that was adjudicated on the merits in state court proceedings.'"). If it did, we

> ha[ve] no power to afford relief unless [Lyons can] show either that the [SJC's] decision affirming the conviction 'was contrary to, or involved an unreasonable application of,' clearly established federal law as reflected in the holdings of th[e] [United States Supreme] Court's cases, or that it 'was based on an unreasonable determination of the facts' in light of the state court record.[4]

Cavazos v. Smith, 132 S. Ct. 2, 6 (2011) (per curiam) (quoting 28 U.S.C. § 2254 (d)(1) and (2)); see also Harrington v. Richter, 131 S. Ct. 770, 785 (2011). On the other hand, "[i]f it did not, we review de novo." Healy, 453 F.3d at 25. Both parties agree that Lyons included the constitutional argument in his brief to the SJC.

---

[4]For purposes of this appeal, we are concerned only with whether the SJC's decision involved an unreasonable application of clearly established federal law.

And even though the SJC did not elaborate on its reasoning for rejecting Lyons's due process claim, the SJC nevertheless addressed the claim when it concluded "that there [was] no merit in [Lyons's] allegations of error." Lyons, 828 N.E.2d at 4. Consequently, our review is deferential.[5] See Harrington, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Thus, the question we must answer is whether the SJC's decision "involved an unreasonable application of[] clearly established Federal law." 28 U.S.C. § 2254(d)(1). Without a doubt,

> [t]his is a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt, and that the defendant seeking habeas show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Butler v. O'Brien, No. 10-1235, 2011 WL 6118529, at *2 (1st Cir. Dec. 9, 2011) (internal quotation marks and citations omitted).

This standard "does not demand infallibility: a state court's decision may be objectively reasonable even if the federal

---

[5]In their opening briefs to this court, both parties, operating under the mistaken belief that the SJC had not discussed Lyons's due process claim, failed to analyze the constitutional claim under the deferential standard required by AEDPA.

habeas court, exercising its independent judgment, would have reached a different conclusion." Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002). Consequently, a determination that the SJC's conclusion was "unreasonable" requires "something greater than incorrect or erroneous." Shuman, 636 F.3d at 30. Moreover, "[i]f it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." Healy, 453 F.3d at 26. Finally, even if we conclude that the SJC's conclusion was "unreasonable, habeas relief remains unavailable unless [Lyons] can also show that the error had a substantial and injurious effect or influence in determining the jury's verdict." Shuman, 636 F.3d at 30.

B. Constitutional Claim

Before getting into the merits of Lyons's claim, we must first address a preliminary matter.

The Commonwealth asserts that we should affirm the district court's denial of habeas relief "[b]ecause the SJC analyzed [Lyons's] evidentiary claim pursuant to Massachusetts state law" and "[e]rrors of state law do not provide a basis for federal habeas corpus relief." To be sure, "[i]t is a fundamental principle of the law of federal habeas corpus in non-death-penalty cases that no habeas claim is stated as to state court criminal convictions unless the alleged errors are violations of the Constitution, laws, or treaties of the United States." Kater v.

-8-

Maloney, 459 F.3d 56, 61 (1st Cir. 2006) (citing Estelle v. McGuire, 502 U.S. 62, 67, 68 (1991)).  Undeniably, "if nothing other than questions of compliance with state law were at issue," id., then we would agree with the Commonwealth.[6]  However, that is not the case.  As previously stated, the Commonwealth concedes that Lyons "properly raised the federal nature of his claim in his brief to the SJC," and as discussed supra, the SJC did consider Lyons's constitutional claim.  See supra, Part II.A.  Moreover, "[t]he habeas petition here is framed in terms of [a] violation[] of federal law," Kater, 459 F.3d at 61, specifically, a violation of Lyons's Fourteenth Amendment due process right to a fair trial.[7]  Accordingly, Lyons's constitutional claim is properly before us and entitled to due consideration.

According to Lyons, the SJC unreasonably applied clearly established federal law when it found no error in the introduction

_____

[6]The issue before us is not, as Lyons suggests, whether the trial court abused its discretion in admitting the autopsy photos at trial.  Similarly, the issue before us is not, as Lyons claims, whether the SJC was correct in concluding that the admission of the photographs was proper.  Again, AEDPA limits our review solely to the issue of whether the SJC's decision affirming the trial court's admission of the autopsy photographs "involved an unreasonable application of[] clearly established Federal law."  28 U.S.C. § 2254(d)(1).

[7]In other words, this is not a case where the petitioner's "vague and unfocused references to fairness were insufficient to draw the state court's attention away from the state-law raiment in which the petitioner cloaked his claim and instead alert it to a possible federal constitutional claim."  Coningford v. Rhode Island, 640 F.3d 478, 483 (1st Cir. 2011).

-9-

of the autopsy photographs into evidence.[8]  Lyons argues that his

son's manner of death was not in dispute; rather, the sole issue at

trial was Lyons's intent, or mens rea, when he acted.  By admitting

the gruesome and allegedly highly inflammatory autopsy photographs,

which Lyons argues are in no way probative of intent, the trial

court, he urges, so infected the proceeding with unfairness that it

deprived him "of due process and his constitutionally guaranteed

right to a fair trial."

An erroneous evidentiary ruling that results in a

fundamentally unfair trial may constitute a due process violation

and thus provide a basis for habeas relief.  See Coningford v.

Rhode Island, 640 F.3d 478, 484 (1st Cir. 2011).  However, to give

rise to habeas relief, "the state court's application of state law

must be 'so arbitrary or capricious as to constitute an independent

due process . . . violation.'"  Id. (quoting Lewis v. Jeffers, 497

U.S. 764, 780 (1990)).  "To be a constitutional violation, a state

---

[8]In support of his claim that the introduction of the autopsy
photographs was wrong and denied him his constitutional right to a
fair trial, Lyons relies on Spears v. Mullin, 343 F.3d 1215 (10th
Cir. 2003), but his reliance is misplaced.  Spears is both
factually and legally inapposite.  See id. at 1226-28 (photographs
showing victim's mutilated body at crime scene were *not relevant* at
*sentencing* to inquiry of whether murder was especially heinous,
atrocious, or cruel where inquiry required proof of conscious
physical suffering and victim had lost consciousness before wounds
were inflicted).  Moreover, even if Spears were factually and
legally similar, AEDPA requires that the relevant legal rule be
clearly established in a Supreme Court holding rather than in
dictum or in a holding of a lower federal court.  See 28 U.S.C. §
2254(d)(1).

evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible." Petrillo, 428 F.3d at 44 n.2; see also Kater, 459 F.3d at 64 (in habeas context, relevant inquiry on appeal regarding evidentiary claim of error is "whether any error rendered the trial so fundamentally unfair that it violated the Due Process Clause"). For habeas purposes, we then review the state court's determination regarding the constitutional claim under the AEDPA standards.

For starters, Lyons has failed to bring to our attention any clearly established Supreme Court precedent holding that the admission of autopsy photographs violates due process rights. As such, "the broader fair-trial principle is the beacon by which we must steer." Coningford, 640 F.3d at 485. Moreover, "[t]he Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly."[9] Kater, 459 F.3d at 61 (internal quotation marks and citation omitted).

In affirming the trial court's admission of the photographs, the SJC stated,

> The judge admitted the photographs only after the Commonwealth had laid a foundation

---

[9]Some examples include Doyle v. Ohio, 426 U.S. 610, 618 (1976) (use of suspect's post-Miranda silence against him); Blackledge v. Perry, 417 U.S. 21, 27 (1974) (vindictive prosecution); Brady v. Maryland, 373 U.S. 83, 87 (1963) ("the suppression by the prosecution of evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment"); Gideon v. Wainwright, 372 U.S. 335, 342 (1963) (failure to appoint counsel in certain criminal cases).

-11-

> indicating that the photographs were relevant
> to establishing the severity of the [baby]'s
> injuries. [Lyons] argues that this was an
> abuse of discretion because the nature,
> extent, and cause of the fatal injuries were
> not issues before the jury. While we agree
> with [Lyons] that the photographs were
> disturbing, we do not agree that they lacked
> relevance. A critical issue in the case was
> the amount of force used to shake the [baby].
> As the nature of the injuries supported an
> inference concerning the amount of force used
> to inflict the injuries, the photographs were
> relevant to that issue. Additionally, the
> final photograph admitted, showing no injury
> to the back of the [baby]'s head, was relevant
> to contradict [Lyons's] testimony that the
> [baby] hit his head in the bathtub.[10]
> Furthermore, the judge appropriately mitigated
> any potential prejudice by cautioning the jury
> not to be affected by the nature of the
> photographs and by instructing them that the
> photographs were to be used only to draw
> attention to a clinical medical status or the
> nature and extent of the [baby]'s injuries.

Lyons, 828 N.E.2d at 9. Though Lyons may disagree with the ruling, the SJC did weigh any unfair prejudice to Lyons against the probative value of admitting the photos. Ultimately, the SJC determined that while the photos were "disturbing," they were nonetheless relevant and probative to the "critical" issue of the amount of force used to shake the baby, as well as Lyons's credibility.

---

[10]On the day of the baby's death, Lyons was home alone with his eleven year old son and the baby. According to Lyons, while he was giving the baby a bath, the baby slipped and bumped his head on the bathtub. Following the incident, Lyons claimed the baby seemed to be in distress -- which led Lyons to panic and shake the baby.

-12-

Further, the SJC deemed the trial court's limiting instruction to the jury sufficient to mitigate any potential unfair prejudice to Lyons. In so ruling and in finding that there was no merit to any of Lyons's claims, the SJC implicitly determined that Lyons's trial was not so infused with inflammatory prejudice as to render it constitutionally unfair. This "was well within the universe of plausible evidentiary rulings." Coningford, 640 F.3d at 485. Given this court's highly deferential standard for evaluating state-court rulings under AEDPA, we cannot say that the SJC's conclusion that the admission of the autopsy photographs was proper was so arbitrary or capricious as to be "an unreasonable application of[] clearly established Federal law." 28 U.S.C. § 2254(d)(1).

## III. CONCLUSION

For the reasons stated, the district court's dismissal of the habeas petition is affirmed.