# United States Court of Appeals
## For the First Circuit

No. 19-1656

JOSEPH GOMES,

Petitioner, Appellant,

v.

STEVEN SILVA, Superintendent,
Massachusetts Correctional Institution-Souza Baranowski,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, Chief U.S. District Judge]

Before

Lynch, Stahl, and Kayatta,
Circuit Judges.

Charles Allan Hope, with whom Cunha & Holcomb, P.C. was on brief, for appellant.
Jennifer K. Zalnasky, Assistant Attorney General, Criminal Bureau, Appeals Division, with whom Maura Healey, Attorney General of Massachusetts, was on brief, for appellee.

May 1, 2020

**STAHL**, **Circuit Judge**.    Following a jury trial in the Suffolk County Superior Court, Joseph Gomes was convicted of one count of first-degree murder and several counts of lesser offenses in relation to a February 2007 shooting that occurred in the Roxbury area of Boston, Massachusetts.  For the murder conviction, he received the mandatory sentence of life without parole.  Gomes appealed his convictions, and the Supreme Judicial Court for the Commonwealth of Massachusetts ("SJC") ultimately upheld them.  See Commonwealth v. Gomes, 61 N.E.3d 441 (Mass. 2016) ("Gomes I"). Gomes subsequently petitioned the District Court for the District of Massachusetts for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He advanced two claims: that the evidence presented at his trial was legally insufficient to support a finding beyond a reasonable doubt that he knowingly participated in the shooting with an intent to kill; and that the trial court committed prejudicial error by admitting into evidence certain items found at an apartment building owned by his parents in violation of his due process rights.  In June 2019, the district court denied the petition but subsequently granted a certificate of appealability. Gomes timely appealed.  We affirm under the highly deferential standard prescribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") for federal habeas review of state criminal convictions.

# I. Background

## A. Factual History

"[W]hen we consider a state conviction on habeas review, we presume the state court's factual findings to be correct." Dorisca v. Marchilli, 941 F.3d 12, 14 (1st Cir. 2019) (quoting Hensley v. Roden, 755 F.3d 724, 727 (1st Cir. 2014)); see 28 U.S.C. § 2254(e)(1). We draw the following essential facts from the opinion of the SJC. See Gomes I, 61 N.E.3d at 444-46.

In February 2007, several members of the Gomes and DaSilva families lived in an apartment building on Langdon Street in Roxbury. The building was owned by petitioner Gomes's parents, who lived in an apartment on the second floor. Anthony DaSilva ("Anthony"), Gomes's nephew, lived in an apartment on the first floor. Gomes did not live in the building at that time.

On the morning of February 13, 2007, as Anthony walked out of his home toward his car, he noticed a black Buick automobile stopped at the intersection of George Street and Langdon Street. The Buick moved slowly down George Street as the driver, David Evans, watched Anthony. Soon after, Anthony, then sitting in his car, saw the same Buick make a fast turn onto Langdon Street. Anthony circled the block, and the Buick followed. He returned to the Langdon Street apartment building and parked his car. He ran into the building with his father, who had been standing by the building's door. They both heard gunshots being fired. A

- 3 -

neighbor also heard the shots and, looking out of her window, saw a man chase the Buick and fire several shots at it before running to the Langdon Street apartment building. Later that day, Evans, who had rented the Buick, returned it to the rental agency with damage to a tire consistent with gunfire; a mechanic who eventually repaired the Buick found a bullet and provided it to the police. After returning the Buick, Evans rented a silver Nissan Maxima automobile with New Hampshire license plates.

Boston police officers arrived at the Langdon Street apartment building shortly after 9:00 a.m. Gomes arrived there within the next fifteen minutes. He was met by the police officers, who allowed him to enter the building to check on his parents. Around 10:00 a.m., Gomes became upset and argumentative with the police and was escorted out of the building in handcuffs. He was released and permitted to leave shortly after. Gomes drove away in a rented silver Chevrolet Impala automobile with New Hampshire license plates.

Based on the report that the gunman had run into the Langdon Street apartment building, police officers cleared the building of all residents. In the process, four young men were discovered in the common basement of the building, arrested, and charged with breaking and entering. One of the men matched the neighbor's description of the man who had fired shots at the Buick. The police secured the building while they waited for a search

- 4 -

warrant. During that time, no residents were permitted to return to their apartments, and while waiting, members of the Gomes and DaSilva families stayed in their cars. Sometime in the afternoon, Gomes's brother-in-law and one or more police officers observed Evans's rented Maxima drive by the building.

Around 6:00 p.m. that evening, Gomes drove his Impala quickly down Roxbury's Maywood Street, where Evans lived. He stopped the vehicle abruptly when he reached a group of seven men who were then standing on a porch and sidewalk near where the Maxima was parked, across the street from Evans's house.

After the Impala stopped, two shooters fired several gunshots at the standing men from its open front and rear passenger-side windows. When the shooting ceased, the car, with Gomes driving, sped off toward Blue Hill Avenue. Within minutes, Boston police officers responded to the scene. One of the attacked men, Fausto Sanchez, had been shot in the lower back. He was transported to a hospital, where he arrived in cardiac arrest and was pronounced dead soon after. The cause of his death was blood loss due to the gunshot wound. Among the remaining men, Roberto Ramos-Santiago sustained multiple gunshot wounds, Joel Perez was shot in the right calf, and Maurice Cundiff fractured his arm while fleeing the gunfire. Perez told an officer that the shooters were in a gray, four-door, newer-model Chevrolet Impala, and that description was broadcast over the police radio.

- 5 -

Two guns had been used in the shooting -- a .38 revolver and a .380 semiautomatic pistol.[1] Neither of those guns were recovered by the police. However, the police did recover one spent .380-caliber shell casing in front of the Maywood Street house and one .38-caliber bullet from the kitchen floor of a home on nearby Savin Street; the bullet had entered the kitchen through a rear window that faced Maywood Street. Meanwhile, shortly after 6:00 p.m., a detective driving to the Maywood Street scene observed an Impala that matched the description given by Perez. Gomes was driving the Impala, and Emmanuel DaSilva ("Emmanuel") -- Anthony's cousin -- was in the front seat. The detective stopped the vehicle. Gomes and Emmanuel were taken into police custody, and the Impala was towed to the police station. Officers searched the Impala pursuant to a warrant and discovered six spent .380-caliber shell casings on the front passenger side -- two on the seat and four on the floor. There was also a piece missing from the passenger-side mirror. Ballistics testing showed that the spent .380-caliber shell casing found on Maywood Street and the six .380-caliber shell casings found inside the Impala had been fired from the same .380-caliber gun. In addition, the .38-caliber

---

[1] As the SJC noted, "[a]ccording to a Boston police ballistics expert, .380 caliber ammunition and .38 caliber ammunition are not interchangeable; a .380 caliber cartridge is designed to be used in a semiautomatic pistol, while a .38 caliber cartridge is designed to be used in a revolver." Gomes I, 61 N.E.3d at 446 n.6.

bullet found in the kitchen of the house on Savin Street and a .38-caliber bullet that was recovered from Ramos-Santiago's arm had been fired from the same .38-caliber gun.

Around 10:00 p.m., the police obtained the search warrant that they were awaiting and searched the Langdon Street apartment building. In the first-floor apartment, police found mail dated May 2006 that was addressed to Gomes, two bags of marijuana, two electronic scales, and $7447 in cash that was hidden in the headboard of a bed. In the basement, police found personal papers, some of which belonged to Gomes, crack cocaine, marijuana, $545 in cash, a red, hooded sweatshirt, a .25-caliber firearm and a .22-caliber firearm, each loaded with six rounds of ammunition, a nine-millimeter firearm loaded with eight rounds of ammunition, and a .380-caliber Mauser semiautomatic firearm containing no ammunition. Subsequently, ballistics determined that the Mauser had fired the bullet that was recovered from Evans's rented Buick and had ejected the five .380-caliber shell casings found by police outside the Langdon Street apartment building.

## B. Procedural History

On May 2, 2007, a Suffolk County grand jury returned indictments charging Gomes with one count of murder in the first degree; six counts of armed assault with intent to murder; one count of assault and battery by means of a dangerous weapon; one count of aggravated assault and battery by means of a dangerous

weapon; four counts of assault by means of a dangerous weapon; two counts of unlawful possession of a firearm; and one count of unlawful possession of ammunition.[2]

A jury trial was held in the Suffolk County Superior Court from November 9 to December 13, 2010. The Commonwealth of Massachusetts's ("Commonwealth") theory was that Gomes was a joint venturer[3] with Emmanuel in committing the Maywood Street shooting to retaliate against Evans for pursuing Anthony and thereby causing the police occupation of the Langdon Street apartment building. Over Gomes's objection, the trial court allowed into evidence the items seized by the police from the apartment building. At the close of the Commonwealth's case, Gomes moved for a required finding of not guilty, which was denied. Gomes renewed his motion at the close of evidence, and it was again denied.

On December 13, 2010, the jury convicted Gomes of one count of murder in the first degree; four counts of armed assault with intent to murder; one count of assault and battery by means

_____

[2] Gomes was also charged as a habitual offender in eight of the counts. These enhancements were dismissed after trial, and prior to trial, a nolle prosequi was entered for the unlawful possession of a firearm and ammunition charges. Gomes was not charged with any offenses in connection with the drugs and firearms found in the building.

[3] "A joint venturer is 'one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime.'" Commonwealth v. Semedo, 921 N.E.2d 57, 65 (Mass. 2010) (quoting Commonwealth v. Soares, 387 N.E.2d 499, 506 (Mass. 1979)).

of a dangerous weapon; one count of aggravated assault and battery by means of a dangerous weapon; and two counts of assault by means of a dangerous weapon. On December 22, Gomes received the mandatory sentence of life without parole for the first-degree murder conviction. He was also sentenced to seventeen to eighteen years in prison, to be served from and after the life sentence, for his conviction of armed assault with intent to murder Ramos-Santiago, and to shorter, concurrent sentences on the remaining counts.

Gomes subsequently appealed to the SJC, arguing, inter alia, that his due process rights were violated because he was convicted on insufficient evidence, and that the trial judge committed prejudicial error in admitting the evidence obtained from the Langdon Street apartment building. On October 26, 2016, the SJC affirmed Gomes's convictions. Gomes I, 61 N.E.3d at 455. The SJC determined that the trial evidence was sufficient to permit a rational jury to infer that Gomes knowingly participated in the shooting and had or shared an intent to kill, and that the trial court's admission into evidence of the items seized from the Langdon Street apartment building was not erroneous. Id. at 447-51. On November 4, Gomes petitioned the SJC for a rehearing, which was denied on December 1, 2016.

On January 26, 2018, Gomes petitioned the District Court for the District of Massachusetts for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. On June 20, 2019, the district court denied the petition. However, on June 26, the district court granted a certificate of appealability. This timely appeal followed.

## II. Discussion

### A. Standard of Review

We review de novo the district court's denial of a petition for a writ of habeas corpus. Linton v. Saba, 812 F.3d 112, 121 (1st Cir. 2016). "Under the 'peculiarly deferential standards' of the [AEDPA], 'error by a state court, without more, is not enough to warrant federal habeas relief.'" Bebo v. Medeiros, 906 F.3d 129, 134 (1st Cir. 2018) (quoting Cronin v. Comm'r of Prob., 783 F.3d 47, 50 (1st Cir. 2015)), cert. denied, 139 S. Ct. 1203 (2019). Habeas relief under the AEDPA

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). An adjudication is "on the merits," and thus entitled to deference under § 2254(d), "if there is a decision finally resolving the parties' claims, with res judicata effect,

- 10 -

that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Linton, 812 F.3d at 122 (quoting Yeboah-Sefah v. Ficco, 556 F.3d 53, 66 (1st Cir. 2009)).

Gomes brings his claims pursuant to § 2254(d)(1).[4] To ascertain "clearly established Federal law" under that provision, we review "the Supreme Court's holdings, as opposed to dicta, at the time the state court rendered its decision." Id. (quoting Hensley, 755 F.3d at 730-31). "An unreasonable application occurs when 'the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case.'" Bebo, 906 F.3d at 134 (alteration in original) (quoting White v. Woodall, 572 U.S. 415, 425 (2014)). "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)).[5] To merit a writ

---

[4] Although Gomes does not identify the prong of § 2254(d) under which he brings his claims, we have recognized that "[i]nferences, characterizations of the facts, and mixed fact/law conclusions are more appropriately analyzed under the 'unreasonable application' prong of section 2254(d)(1)." Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002). In contrast, "the special prophylaxis of section 2254(d)(2) applies only to determinations of 'basic, primary, or historical facts.'" Id. (quoting Sanna v. Dipaolo, 265 F.3d 1, 7 (1st Cir. 2001)).

[5] On the other hand, a state court's decision is "contrary to" clearly established federal law if the state court "'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts that are materially

of habeas corpus, a petitioner must show that "the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103. The state court's ruling "may be objectively reasonable even if the federal habeas court, exercising its independent judgment, would have reached a different conclusion." Lyons v. Brady, 666 F.3d 51, 54 (1st Cir. 2012) (quoting Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002)).

Because the SJC adjudicated Gomes's claims on the merits, we apply this highly deferential standard. See Linton, 812 F.3d at 123. Reviewing the claims in turn, we ultimately conclude that both fail.

### B. Sufficiency of the Evidence

Gomes first claims that the SJC unreasonably sustained his conviction for first-degree murder as a joint venturer because the trial evidence was insufficient to support a jury finding beyond a reasonable doubt that he knowingly participated in the shooting and had or shared an intent to kill. He contends that

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" Linton, 812 F.3d at 122 (alterations in original) (quoting Hensley, 755 F.3d at 731). Gomes appears to argue only that the challenged elements of the SJC's decision were "unreasonable application[s]" of clearly established federal law and not that they were "contrary to" it.

this insufficiency violated his constitutional due process right to be convicted only upon proof beyond a reasonable doubt of every element of a crime. See In re Winship, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause [of the Fourteenth Amendment] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

The clearly established federal law governing direct review of sufficiency claims is provided by Jackson v. Virginia, 443 U.S. 307 (1979). See Linton, 812 F.3d at 123. Jackson requires a reviewing court to ask "the relevant question [of] whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. Further, a criminal conviction may be supported by circumstantial evidence alone. Id. at 324-25; see Magraw v. Roden, 743 F.3d 1, 6 (1st Cir. 2014) ("[U]nder Jackson, direct evidence is not necessary to sustain a conviction. . . . This principle is even more firmly established in connection with the deferential approach to state-court decisionmaking that federal habeas review demands." (citation omitted)).

A federal court reviewing a habeas petition that raises a sufficiency claim under Jackson must apply a "twice-deferential standard." Parker v. Matthews, 567 U.S. 37, 43 (2012).

Specifically, on habeas review, we may not overturn an underlying state court decision rejecting a sufficiency challenge unless the decision is "objectively unreasonable." Id. (quoting Cavazos v. Smith, 565 U.S. 1, 2 (2011)). Thus, we ask "whether the state courts' ruling that the evidence is constitutionally sufficient was itself 'unreasonable.'" Winfield v. O'Brien, 775 F.3d 1, 8 (1st Cir. 2014) (quoting § 2254(d)(1)). "'Unreasonable' in this context means that the decision 'evinces some increment of incorrectness beyond mere error.'" Id. (quoting Leftwich v. Maloney, 532 F.3d 20, 23 (1st Cir. 2008)).

With these principles in mind, we consider the SJC's rejection of Gomes's sufficiency challenge. Under Massachusetts law,

> [t]o succeed on a theory of deliberately premeditated murder as a joint venturer . . . the Commonwealth was required to prove that [Gomes] was "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement, [was] willing and available to help the other if necessary."

Commonwealth v. Zanetti, 910 N.E.2d 869, 875 (Mass. 2009) (third alteration in original) (quoting Commonwealth v. Green, 652 N.E.2d 572, 578 (Mass. 1995)), overruled in part on other grounds by Commonwealth v. Britt, 987 N.E.2d 558 (Mass. 2013). Further, the Commonwealth needed to prove that Gomes "shared the mental state or intent for deliberately premeditated murder, which is malice, and, in particular, an intent to kill." Id. On direct review of

- 14 -

Gomes's conviction, the SJC explained that it would "determine whether the evidence, viewed in the light most favorable to the Commonwealth, 'was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime[s] charged.'" Gomes I, 61 N.E.3d at 447 (alteration in original) (quoting Commonwealth v. Lao, 824 N.E.2d 821, 829 (Mass. 2005)).[6] Viewing the evidence in the light most favorable to the Commonwealth, the SJC determined that:

> [A] reasonable jury could find that [Gomes] . . . was motivated by anger at the events that resulted from Evans's actions . . . that [Gomes] was the driver of the Impala that sped down Maywood Street . . . and stopped the vehicle directly parallel to the group of young men standing near where Evans's Maxima was parked; that [Gomes] remained stopped at that location while multiple shots were fired from two different weapons at the group of young men; that when the shooting ceased, [Gomes] sped off, quickly removing the shooters from the scene; and that the shell casings located in [Gomes's] vehicle were consistent with at least one casing found at the scene.

Id. at 448. The SJC concluded that the evidence "was more than

---

[6] The Massachusetts standard cited by the SJC is consistent with Jackson and is thus entitled to the same deference under § 2254(d)(1). See Linton, 812 F.3d at 122 ("[A] state-court adjudication of an issue framed in terms of state law is nonetheless entitled to deference under section 2254(d)(1) as long as the state and federal issues are for all practical purposes synonymous and the state standard is at least as protective of the defendant's rights as its federal counterpart." (alteration in original) (quoting Foxworth v. St. Amand, 570 F.3d 414, 426 (1st Cir. 2009))); Commonwealth v. Latimore, 393 N.E.2d 370, 374-75 (Mass. 1979) (concluding that this standard conforms to the federal constitutional requirement announced in Jackson, 443 U.S. at 318-19).

- 15 -

sufficient to permit a reasonable fact finder to infer that [Gomes] knowingly participated in the shooting incident and had or shared an intent to kill." Id. In support, the SJC cited several precedential cases standing for the proposition that the requisite knowledge and intent under a joint venture theory may be inferred from certain actions undertaken by a defendant. Id. (citing Commonwealth v. Williams, 661 N.E.2d 617, 625 (Mass. 1996) (holding, on direct review of first-degree murder conviction, that "[j]oint venture may be proved by circumstantial evidence, including evidence of flight together"); Commonwealth v. Giang, 524 N.E.2d 383, 386 (Mass. 1988) (holding that knowing and intentional participation in principals' crime may be inferred where defendant drives getaway vehicle); Commonwealth v. Cintron, 759 N.E.2d 700, 707 (Mass. 2001) (holding that defendant's intent to kill and knowing participation could be inferred where defendant knew of prior violent history between brother and victim, chased victim alongside brother, and encouraged brother to shoot victim), abrogated in part on other grounds by Commonwealth v. Hart, 914 N.E.2d 904 (Mass. 2009); Commonwealth v. Soares, 387 N.E.2d 499, 506 (Mass. 1979) (holding, on direct review of first-degree murder conviction, that "[t]he jury may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense")).

Gomes presents a tripartite argument that the SJC's determination was unreasonable. He first contends that it was unreasonable for the SJC to rely on the post-facto discovery of the shell casings in his rented vehicle that matched one found at the scene of the shooting to support an inference that he was aware, prior to the shooting, that his passengers were armed and intended violence.

We reject this argument. The fact of the shell casings being present in Gomes's rented vehicle was only one factor that the SJC listed before stating that the collective evidence permitted a reasonable factfinder to infer that Gomes had the requisite intent to kill and knowledge of the shooting. The mere inclusion of that fact, even if it does not speak to knowledge and intent prior to the shooting, does not "evince[] some increment of incorrectness beyond mere error" in the SJC's determination. Winfield, 775 F.3d at 8 (quoting Leftwich, 532 F.3d at 23).

Gomes next argues that the SJC's sufficiency determination was unreasonable because there was no other evidence from which a rational jury could infer that he had prior knowledge of and intent to join a shooting. He submits that the evidence may have allowed a rational jury to infer that he was searching for Evans, but not that he was aware or intended that the search would morph into a fatal shooting targeting a group of people that

- 17 -

did not include Evans.

This contention is unpersuasive. On habeas review of a state-court conviction for evidentiary sufficiency, we "may not freely reweigh competing inferences but must accept those reasonable inferences that are most compatible with the jury's verdict." Magraw, 743 F.3d at 7. Here, the SJC reasonably concluded that a rational jury, viewing the collective evidence in the light most favorable to the Commonwealth, could infer that Gomes was motivated by anger at Evans and that accordingly, as the driver of the vehicle from which the shooting emanated who kept the car stopped throughout the shooting before speeding off, he knowingly participated in the shooting and had or shared an intent to kill.

Finally, Gomes argues that the SJC unreasonably relied on Williams, 661 N.E.2d 617, and Giang, 524 N.E.2d 383, in determining that a rational jury could infer his prior knowledge of the shooting from the fact that he quickly drove the car from the scene of the shooting. He contends that Williams is distinguishable from this case because it involved a defendant fleeing on foot with the principal, and that Giang is distinguishable because the defendant in that case waited in a getaway vehicle for the fleeing principals to enter before driving off.

This argument too fails. Williams, 661 N.E.2d at 625, and Giang, 524 N.E.2d at 386, hold that the knowledge and intent necessary to convict on a theory of joint venture may be inferred from concerted action between the defendant and a principal, specifically, joint flight from the scene of the crime. The SJC was not objectively unreasonable in determining that this relevant precedent supported its conclusion that a reasonable factfinder could have inferred that Gomes -- who drove to the scene of the shooting, waited there while it occurred, and then quickly sped off with the shooter or shooters in tow -- knowingly participated in the shooting and had or shared an intent to kill.[7]

Accordingly, the SJC was not objectively unreasonable in determining that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to permit a rational factfinder to infer beyond a reasonable doubt that Gomes knowingly participated in the shooting and had or shared an intent to kill

---

[7] Attempting to neutralize the fact of joint flight, Gomes asserts that the more probable inference is that he was surprised by the shooting but could not order the shooters to exit his vehicle until he had driven off and recovered from his surprise. We decline this invitation to elevate a conflicting inference over the reasonable inference, credited by the SJC and more compatible with the verdict, that Gomes knew of the shooting beforehand and had or shared an intent to kill. See Magraw, 743 F.3d at 7; Linton, 812 F.3d at 123 ("[A] federal habeas corpus court faced with a record . . . that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." (alterations in original) (quoting Jackson, 443 U.S. at 326)).

- 19 -

as necessary to sustain his conviction for first-degree murder as a joint venturer. Gomes's first claim to habeas relief therefore fails.

## C. Admission of Evidence Allegedly in Violation of Due Process

Gomes next claims that the SJC unreasonably determined that the trial court's admission into evidence of certain items, including money, drugs, and guns, recovered from the Langdon Street apartment building did not constitute error. He argues that the admission denied him his constitutional due process right to a fair trial. This claim is unavailing.

An erroneous evidentiary ruling that results in a fundamentally unfair trial in state court may violate the Due Process Clause of the Fourteenth Amendment and merit a federal writ of habeas corpus. See Lyons, 666 F.3d at 55-56; Coningford v. Rhode Island, 640 F.3d 478, 484 (1st Cir. 2011); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Such relief is elusive, as the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling *v.* United States, 493 U.S. 342, 352 (1990). To warrant habeas relief, "the state court's application of state law must be 'so arbitrary or capricious as to constitute an independent due process . . . violation.'" Coningford, 640 F.3d at 484 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). That is, for there "[t]o be a constitutional violation, [the] state evidentiary error

- 20 -

must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible." Lyons, 666 F.3d at 56 (quoting Petrillo v. O'Neill, 428 F.3d 41, 44 n.2 (1st Cir. 2005)).

Minding these tenets, we turn to the SJC's rejection of Gomes's argument that the trial court's admission of the challenged evidence was prejudicial error. Under Massachusetts law, "evidence of uncharged criminal acts or other misbehavior is not admissible to show a defendant's bad character or propensity to commit the charged crime, but may be admissible if relevant for other purposes such as 'common scheme, pattern of operation, absence of accident or mistake, identity, intent or motive.'" Commonwealth v. Dwyer, 859 N.E.2d 400, 407 (Mass. 2006) (quoting Commonwealth v. Marshall, 749 N.E.2d 147, 155 (Mass. 2001)). In Gomes's case, the SJC explained that:

> The trial judge admitted the evidence challenged by [Gomes] for the limited purpose of proving [Gomes's] knowledge, motive, or intent. The evidence was relevant with respect to all three of these issues, where the Commonwealth's theory was that [Gomes] (and Emmanuel), based on loyalty to family and friends, sought to retaliate against Evans for Evans's pursuit of Anthony and the family members' subsequent disruption and loss of valuable items (the cash, guns, and drugs in the basement) due to police action . . . . This evidence provided a possible explanation for [Gomes's] clear agitation about the presence of the police in his family's apartment building and more directly showed the extent of the loss to [Gomes's] family members and friends, which may have fueled [Gomes's] desire to retaliate over and above Evans's threatening conduct toward Anthony.

- 21 -

Gomes I, 61 N.E.3d at 449 (citing Commonwealth v. DaSilva, 27 N.E.3d 383, 391 (Mass. 2015) (holding that evidence of uncharged conduct may be relevant to show motive to retaliate)). In response to Gomes's argument that the connection between him and the evidence was attenuated, the SJC reasoned that "the link between the over-all inconvenience to [Gomes's] family and his alleged motivation to commit the crime was certainly strong enough to satisfy the threshold requirement of relevance." Id. at 449 (citing Commonwealth v. Ashley, 694 N.E.2d 862, 866 (Mass. 1998) ("There is no requirement that evidence [of motive] be conclusive in order to be admissible." (alteration in original))).

The SJC did, however, comment on factors that diminished the probative value of the challenged evidence, such as that Gomes "did not live on Langdon Street, and was not present when the incident involving Evans and Anthony took place," and that he "was not charged with any crimes related to the items seized from the two apartments." Id. at 450. The SJC also observed that the evidence presented the possibility of prejudicially "paint[ing] [Gomes] generally as a violent man connected to a violent family and involved in a life of crime" and "being used improperly by the jury as evidence of bad character and criminal propensity." Id.

Deeming "[t]he question whether the evidence was more prejudicial than probative" to be "close," the SJC "recognize[d] that the trial judge is in the best position, and consequently

- 22 -

possesses substantial discretion, to resolve the question."  Id. (citing L.L. v. Commonwealth, 20 N.E.3d 930, 943 n.27 (Mass. 2014) (holding that abuse of discretion occurs only where "the judge made 'a clear error of judgment in weighing' the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (citation omitted))).  The SJC ultimately concluded that there was no error in the admission of the challenged evidence, "[p]articularly in light of the judge's instruction, given during trial when the evidence was admitted and repeated in his final jury charge, that the evidence was offered for a limited purpose and the jury were not to consider the evidence for the purpose of 'criminal propensity' or 'bad character.'"  Id.[8]

Gomes does not present, and we do not find, any "clearly established" Supreme Court precedent holding that the admission of nearly prejudicial but ultimately probative and relevant evidence of uncharged criminal activity accompanied by a proper limiting instruction violates due process rights.[9]  "The absence of an on-

---

[8] The SJC further noted that "even assuming that the evidence should not have been admitted, the admission would likely not qualify as prejudicial error warranting reversal, given the strength of the evidence that [Gomes] knowingly participated in the Maywood Steet shooting incident with the requisite intent to kill."  Gomes I, 61 N.E.3d at 450 n.17.

[9] The closest that the Supreme Court apparently has come to addressing this type of claim was to "expressly decline[] to determine 'whether a state law would violate the Due Process Clause

- 23 -

point pronouncement from the Supreme Court leaves hanging by the slimmest of threads the petitioner's claim that the state court's admission of the [challenged] evidence can be deemed an unreasonable application of the broader fair-trial principle." Coningford, 640 F.3d at 485. Thus, Gomes summarily argues that the admission of this evidence infused the trial with inflammatory prejudice and deprived him of a fair trial. See Lyons, 666 F.3d at 56.

We reject this argument. Reviewing the trial court's ruling, the SJC carefully reasoned in accordance with Massachusetts and federal law that the challenged evidence was relevant and that the trial judge was best positioned to determine whether its probative value outweighed its potential prejudicial effect. See Gomes I, 61 N.E.3d at 449-50. The SJC's affirmance of the trial court's decision, "whether or not an unarguably correct evidentiary ruling, was well within the universe of plausible evidentiary rulings." Coningford, 640 F.3d at 485.

The SJC also reasonably determined that the trial court's limiting instruction that the jury consider the challenged evidence for a circumscribed purpose, and not for the purposes of "criminal personality" or "bad character," weighed against a

_____

[of the Fourteenth Amendment] if it permitted the use of "prior crimes" evidence to show propensity to commit a charged crime.'" Coningford, 640 F.3d at 484-85 (quoting Estelle, 502 U.S. at 75 n.5).

- 24 -

finding of prejudicial error.  See Gomes I, 61 N.E.3d at 450; United States v. Olano, 507 U.S. 725, 740 (1993) ("[It is] the almost invariable assumption of the law that jurors follow their instructions." (alteration in original) (quoting Richardson v. Marsh, 481 U.S. 200, 206 (1987))).  Accordingly, the SJC implicitly concluded that Gomes's trial was not infused with inflammatory prejudice in violation of constitutional due process. See Lyons, 666 F.3d at 57 (finding that the SJC made such an implicit conclusion under similar circumstances).  Gomes does not now challenge the efficacy of that limiting instruction.  Overall, Gomes fails to establish that the SJC's ruling on his claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

The SJC did not unreasonably apply clearly established federal law in determining that the trial court did not commit prejudicial error in admitting the challenged evidence and that Gomes's trial was not unfair in violation of constitutional due process.  Gomes's second claim to habeas relief thus fails.

### III. Conclusion

We AFFIRM the district court's denial of the petition for a writ of habeas corpus.